EXHIBIT A

## Guarantee Agreement

This Guarantee Agreement ("**Guarantee Agreement**"), effective as of _____, given by Almod Diamonds Ltd., Inc. (the "**Guarantor**"), a corporation organized under the laws of New York, is given to induce Princess Cruise Lines, Ltd. ("**Company**") to enter into the Fine Jewelry Sales Concession Agreement (as such agreement may be amended, modified or extended from time to time by its parties) (the "**Agreement**") effective as of _____, between Company and Crown Jewels by Diamonds International ("**Concessionaire**"). This Guarantee Agreement provides for the guarantee referred to in Article 7 of the Agreement. Capitalized terms used and not defined herein shall have the meaning given to them in the Agreement.

BACKGROUND

1.  The Guarantor is an affiliate of and the principal supplier of merchandise to Concessionaire; and

2.  As a material inducement to Company to enter into the Agreement, the Guarantor has agreed to issue in favor of Company, this Guarantee Agreement pursuant to which the Guarantor guarantees all of the Payment Obligations (as defined below). This Guarantee Agreement shall be issued contemporaneously with the execution of the Agreement.

THE PARTIES HEREBY AGREE AS FOLLOWS:

1. Obligations of the Guarantor. The Guarantor irrevocably, absolutely and unconditionally guarantees to Company, its successors and assigns (whether collateral assigns or otherwise), the prompt and full payment in United States currency and performance of the Payment Obligations (defined below) and agrees in the event Concessionaire fails to fully and timely perform said Payment Obligations, to fully and timely perform same immediately upon demand. "**Payment Obligations**" means the Minimum Revenue Guarantee (as such term is defined in the Agreement), not subject of a bona fide dispute, and includes, without limitation, (i) all principal and interest (including all interest which accrues after the commencement of any case or proceeding in bankruptcy after the insolvency of, or for the reorganization of Concessionaire, whether or not allowed in such proceeding), and (ii) all reasonable costs and expenses of collection after demand for payment of the Minimum Revenue Guarantee to Concessionaire by Company, including reasonable attorneys' fees, in the event that Company obtains a judgment against Concessionaire in the amount sought in any complaint filed against Concessionaire with respect to the Minimum Revenue Guarantee.

2. Consent to Company Acts. The Guarantor agrees, without affecting in any way the Guarantor's liability to Company hereunder, that Company may, without notice to or consent of the Guarantor and upon such terms as it may deem advisable and with or without consideration and after notice of cancellation is received by Company: (a) extend, in whole or in part, by renewal or otherwise, and as often as Company may wish, the time of payment of any indebtedness owing by Concessionaire, to Company, or held by Company as security for the Payment Obligations; (b) release, surrender, exchange, modify, impair, or extend the period of duration, or the time for performance or payment, of any collateral securing the Payment Obligations; (c) settle or compromise any claim of Company against Concessionaire, or against any other person, firm or corporation, whose obligation is held by Company as collateral security for the Payment Obligations; (d) release in whole or in part any person liable for the payment of the Payment Obligations, including, but not limited to, any other guarantor or any person liable as an endorser, guarantor or judgment debtor (if Company obtains a judgment) on the Payment Obligations and, in any event, such release shall not affect the liability of the Guarantor for the entire amount of the Payment Obligations; and (e) generally deal with Concessionaire or any of the security for the Payment Obligations or other person or party as Company may see fit. Further, Company shall not be under any obligation whatsoever to obtain or perfect or to maintain the perfection of any security interest or other lien on property to secure indebtedness of Concessionaire to Company or the obligations of the Guarantor hereunder and Company shall have no obligation to, and shall not have any liability for failing to, obtain or perfect or to maintain the perfection of any security interest or lien on property to secure indebtedness of

Concessionaire or the obligations of the Guarantor hereunder. Any failure of Company to obtain and perfect or to maintain the perfection of any security interest or lien shall not affect in any way whatsoever the obligations of the Guarantor to Company under this Guarantee Agreement. The Guarantor hereby ratifies and confirms any such extension, renewal, release, surrender, exchange, modification, impairment, settlement, or compromise, and all such actions shall be binding upon the Guarantor who hereby waives all defense, counterclaims or offsets which the Guarantor might otherwise have by reason thereof.

3. Waivers by Guarantor. The Guarantor waives notice of acceptance of this Guarantee Agreement by Company.

4. Remedies of Company. Company may proceed against the Guarantor to collect any obligation covered by this Guarantee Agreement, only after proceeding against Concessionaire for the Payment Obligations, or any other person, firm or corporation liable for the Payment Obligations, but without first resorting to any property at any time held by Company as collateral security for the Payment Obligations or the obligations under this Guarantee Agreement, and without any marshalling of assets whatsoever. Company will notify the Guarantor in writing that it has elected to proceed against the Guarantor in any such case (the **"Guarantee Call Notice"**). All of Company's rights and remedies shall be cumulative and any failure of Company to exercise any right hereunder shall not be construed as a waiver of the right to exercise the same or any other right at any time, and from time to time, thereafter.

5. Bankruptcy of Concessionaire. Notwithstanding that this Guarantee Agreement may have been cancelled and/or returned to the Guarantor, to the extent Concessionaire has made any payments to Company within the ninety (90) day period following the date this Guarantee Agreement was so cancelled and/or returned to the Guarantor, and the Guarantor was obligated under this Guarantee Agreement for said payments, the liability of the Guarantor hereunder shall at all times continue for the amounts so paid by Concessionaire to Company. If, for any reason, (e.g. bankruptcy, or otherwise), Company is not permitted to retain the payments so made by Concessionaire during said ninety (90) day period, the Guarantor shall be liable under this Guarantee Agreement for the amount of such payments as if this Guarantee Agreement had never been cancelled and Company shall be entitled to recover said amount so paid by Concessionaire within said ninety (90) day period. If Company shall have marked this Guarantee Agreement "Canceled" and/or returned this Guarantee Agreement to the Guarantor, and under the provisions of this Section 5, the Guarantor has continuing liability to Company for certain amounts which Company has or is obligated to return to Concessionaire, then, in such case, Company may enforce its rights under this Guarantee Agreement upon any copy of this Guarantee Agreement notwithstanding the fact that the original of this Guarantee Agreement may have been marked "Canceled" and/or returned to the Guarantor.

6. Construction and Benefit. This Guarantee Agreement is delivered and made in, and shall be construed pursuant to and governed by, the laws of the State of New York, and is binding upon the Guarantor and its legal representatives and successors, and shall inure to the benefit to Company, its successors and assigns.

7. Miscellaneous. In the event it becomes necessary for Company to exercise its rights under this Guarantee Agreement, whether suit be brought or not, the Guarantor shall be liable for all reasonable costs and attorney's' fees incurred by Company, including reasonable costs and attorney's' fees incurred by Company on appeal. In the further event Company obtains a final judgment against the Guarantor upon this Guarantee Agreement, the judgment shall bear interest at the judgment rate. Further, the Guarantor agrees that the proper venue for any action that may be brought under this Guarantee Agreement, in addition to any other venue permitted by law, shall be in Los Angeles County, California. Both Company and the Guarantor hereby waive trial by jury. This Guarantee Agreement shall be a continuing one and shall be binding upon the Guarantor regardless of how long before or after the date hereof any of the Obligations were or are incurred. The provisions of this Guarantee Agreement shall survive termination of the Agreement. The term "Company" shall be deemed to include any individual, partnership or corporation acting as its nominee or agent, and any of its corporate subsidiaries or affiliates, the stock or interest of which is owned or controlled, directly or indirectly, by it or by any affiliate of Company. The term "Concessionaire" shall include (a) any successor individual or individuals, association, partnership, corporation or other entity to which all or substantially all of the business or assets of Concessionaire shall have been transferred, (b) any new partnership which shall have been created by reason of the admission of any new partner or partners therein and/or the dissolution of the existing partnership by

death, resignation or other withdrawal of any partner, and (c) any other corporation into or with which Concessionaire shall have been merged, consolidated, reorganized, purchased or absorbed.

8. Complete Agreement.  The whole of this Guarantee Agreement is herein set forth and, other than the Agreement, there is no verbal or other written agreement and no understanding or custom affecting the terms hereof. This Guarantee Agreement can be modified only by a written instrument signed by both parties.

9. Intentionally Deleted.

10. Notice.  All notices, demands, requests and other communications, if any, required under this Guarantee Agreement may be given by email at the email address listed below which will be deemed received upon the sender's receipt of successful transmission, or by internationally recognized commercial air couriers (including FedEx and DHL) which will be deemed received upon receipt of evidence of delivery, addressed to the party for whom it is intended at its address set forth below.  Any party may designate a change of address by written notice to the other party, received by such other party at least ten (10) days before such change of address is to become effective. The addresses for the purposes of this Section 10 are:

To:

Almod Diamonds Ltd., Inc.
Attn: Albert Gad
12 E. 49th Street, 39th Floor
New York. NY 10017

With Copy To: legal@diamondsinternational.com
mireige@diamondsinternational.com

To:

Princess Cruise Lines. Ltd.
24305 Town Center Drive
Santa Clarita, CA 91355
            Attn:
With Copy To:

Daniel Howard
General Counsel
Email:  dhoward@hagroup.com

11. Savings Clause. If any provision or portion of this Guarantee Agreement is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guarantee Agreement, and the remaining provisions and portions thereof shall continue in full force and effect.

12. Assignment.  This Guarantee Agreement may not be assigned or otherwise transferred by Guarantor without the prior written consent of Company, which may be withheld or delayed in Company's sole discretion.

13. Headings. The headings of Sections of this Guarantee Agreement are for convenient reference only, and shall not affect the construction or interpretation of any of the term and provisions set forth in this Guarantee Agreement.

IN WITNESS WHEREOF, the Guarantor intending to be legally bound hereby has signed this Guarantee Agreement effective as of the date first written above.

By: _____

Name:   Albert Gad

Title:   President & CEO

Date:   OCT 19, 2023